IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
**Northern Division**

| | |
|---|---|
| DOLPHIN MARINE LIMITED,<br><br>        Plaintiff,<br>    v.<br><br>ECHO MARINE SHIPPING SERVICES DMCC, also known as EMSS FZCO,<br><br>        Defendant. | Case No.<br><br>**IN ADMIRALTY** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**EX PARTE APPLICATION/MOTION FOR ISSUANCE OF PROCESS OF MARITIME**
**ATTACHMENT AND GARNISHMENT UNDER SUPPLEMENTAL RULE B**

Plaintiff Dolphin Marine Limited ("DML" or "Plaintiff"), by and through its attorneys, Blank Rome LLP, submits this Memorandum of Law in support of its *ex parte* application/motion for an order authorizing the issuance of Process of Maritime Attachment and Garnishment pursuant to Supplemental Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Rule B") against Defendant Echo Marine Shipping Services DMCC, also known as EMSS FZCO ("EMSS" or "Defendant").

The instant action arises from Defendant's tortious and fraudulent conduct in issuing unauthorized bills of lading, which caused the arrest of Plaintiff's vessel and resulted in security and related losses. Plaintiff seeks attachment to obtain security for its maritime tort and fraud claims in aid of proceedings pending before the Courts of Dubai. Based on confirmation from Plaintiff's London counsel, Plaintiff understands that Echo Marine Shipping Services DMCC and EMSS FZCO are one and the same entity or a continuation of the same entity, and that the change in designation from DMCC to FZCO was required by Dubai authorities. Plaintiff therefore uses

1

those designations to refer to the same Defendant; this application does not rely on an alter-ego theory. The facts are set forth in the Verified Complaint and accompanying declaration of Noe S. Hamra, dated August 10, 2026 (the "Hamra Declaration"). See Hamra Decl. ¶ 2. As shown therein, Plaintiff respectfully submits that all requirements for the issuance of an order of attachment pursuant to Rule B are satisfied here.

## I.   THE COURT HAS SUBJECT MATTER JURISDICTION

The Verified Complaint alleges admiralty jurisdiction pursuant to 28 U.S.C. § 1333 and Rule 9(h) of the Federal Rules of Civil Procedure. Plaintiff's claim falls within this Court's maritime jurisdiction because it is a maritime tort and fraud claim arising from Defendant's unauthorized and fraudulent issuance of maritime bills of lading in connection with the carriage of goods by sea, and from the resulting arrest of Plaintiff's vessel and security and related losses. Plaintiff seeks security for those maritime claims in aid of proceedings pending before the Courts of Dubai. See Verified Complaint at ¶¶ 7-15.

## II.   RULE B DOES NOT REQUIRE PRE-ATTACHMENT NOTICE

As stated in the 1966 Advisory Committee Notes to Rule B, no notice was provided for because "[n]one is required by the principles of due process, since it is assumed that the garnishee or custodian of the property attached will either notify the defendant or be deprived of the right to plead the judgment as a defense in an action against him by the defendant." Rule B Advisory Committee's notes to the 1966 adoption. The Committee noted in their comments on the 1985 Amendment that Rule B was amended to provide for judicial scrutiny before the issuance of the attachment "to eliminate doubts as to whether the Rule is consistent with the principles of procedural due process enunciated by the Supreme Court . . ." *Id.* Further:

> The rule envisions that the order will issue when the plaintiff makes a prima facie showing that he has a maritime claim against the defendant in the amount sued for and the defendant is not present in

2

the district.    A simple order with conclusory findings is contemplated.

*Id.*   Therefore, Plaintiff may proceed *ex-parte* and provide notice promptly <u>after</u> a successful attachment of the Defendant's property;

As was well stated in *Trans-Asiatic Oil Limited, S. A. v. Apex Oil Company*, 604 F. Supp. 4 (D. P.R. 1984):

> Maritime attachment is part of admiralty jurisdiction in the maritime context.  Since the constitutional power of the federal courts is separately derived from admiralty, suits under admiralty jurisdiction involve separate policies to a certain extent.  This principle suggests, not only that jurisdiction by attachment of property should be accorded special deference in the admiralty context, but also that <u>maritime actors must reasonably expect to be sued where their property may be found</u>. *See Amoco Overseas Oil v. Compagnie Nationale Algenienne, supra*, 605 F. 2d [648] at 655 [2d Cir. 1979]. Thus, the history of maritime attachment itself, the autonomy of admiralty jurisprudence, the long constitutional viability of maritime attachment, and the modern trend in admiralty to strengthen traditional admiralty remedies against property, rather than erode them, compel the conclusion that the common law principles enunciated in *Shaffer v. Heitner, supra* [433 U.S. 186, 97 S. Ct. 2569, 53 L. Ed. 2d 683 (1977)] do not apply to Rule B(1) attachments.
>
> …
>
> Property attached under Supplemental Rule B could be shipped out, otherwise disposed of, or concealed; credits, such as the one involved here, could be collected or quickly transferred from the jurisdiction.  <u>Notice prior to attachment would in many instances enable the owner to frustrate judicial enforcement of the lien. In fact, it could defeat the purposes of the attachment.</u>

*Id.* at 7-8 (emphasis added).

### III.    <u>THE CONDITIONS FOR A RULE B ATTACHMENT EXIST</u>

Pursuant to Rule B, a plaintiff must show that it has satisfied four prerequisites: (1) the plaintiff has an in personam claim against the defendant which is cognizable in admiralty; (2) the defendant "cannot be found within the district" in which the action is commenced; (3) property belonging to the defendant is present or will soon be present in the district; and (4) there is no

3

statutory or general maritime law proscription to the attachment." *Harbor Pilots of NY NJ, LLC v. Bouchard Transp. Co.*, 474 F. Supp. 3d 727, 729-30 (D. Md. 2020).

If a plaintiff meets these requirements, the court "must enter an order authorizing the attachment and garnishment." *Id.* at 730 ; *see also DS-Rendite Fonds Nr. 108 VLCC Ashna GmbH & Co Tankschiff KG v. Essar Capital Ams. Inc.*,  882 F.3d 44, 49 (4th Cir. 2018) ("[a]s a general matter, the pleading requirements under Rule B are said to be easily met") (citing *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 443 (2d Cir. 2006)).

### A.  Plaintiff's Claim is a *Prima Facie* Admiralty or Maritime Claim

Plaintiff has a prima facie maritime tort and fraud claim. Defendant's unauthorized and fraudulent issuance of maritime bills of lading in connection with the carriage of goods by sea caused cargo interests to arrest the M/V GRACE. Plaintiff incurred security and related losses to obtain the vessel's release, and seeks damages of USD 1,701,233. Plaintiff seeks security in aid of the tort and fraud proceedings pending before the Courts of Dubai. See Verified Complaint at ¶¶ 7-15.

### B.  Defendant Echo Marine Shipping Services DMCC, also known as EMSS FZCO, Cannot be Found Within this District

Pursuant to Local Rule LAR(b)(1), a defendant is not "found within the District" for purposes of Rule B "unless the defendant can be personally served therein by delivering process . . . (ii) in the case of a corporation, trust or association, to an officer, trustee, managing, or general agent thereof." Here, as set forth in the Hamra Declaration, Plaintiff has met its initial burden of establishing that Defendant could not be found in this District. *See* Hamra Decl. at ¶¶ 4-9; Verified Complaint at ¶ 20. Based on searches of the Maryland Department of Assessments and Taxation's business records, public telephone directories, and publicly available internet sources under the names "Echo Marine Shipping Services DMCC," "EMSS DMCC," and "EMSS FZCO," Plaintiff

has found no indication that Defendant is incorporated or registered to do business in Maryland, maintains an office in Maryland, or has a registered or managing agent for the receipt of service of process in Maryland. *See* Hamra Decl. at ¶¶ 4-9.

### C. Defendant's Property is Located Within the District

Plaintiff seeks attachment only of Defendant's fuel bunkers, namely the bunkers already onboard the ARGOS M and any bunkers expected to be onboard upon its arrival. The Baltimore-based agent confirmed that it was appointed by EMSS FZCO for the ARGOS M. The agent reported that the ARGOS M is expected to take pilot at Baltimore at 16:00 local time on August 11, 2026, be on dock on August 12, 2026, and depart on August 15, 2026. A Greece-based shipbroker separately confirmed that EMSS has not yet redelivered the vessel and expects redelivery next week. No Baltimore bunkering arrangement is scheduled so far. Accordingly, the target property is the bunkers already onboard, and any bunkers expected to be onboard upon arrival, up to a total value of **USD 1,701,233**. See Hamra Decl. at ¶¶ 11-13; Verified Complaint at ¶¶ 18-24.

As set forth in the Hamra Declaration, there is good cause to believe that Defendant's property will be located within this District. Based on industry custom and practice, those bunkers are property of Defendant as charterer and are subject to attachment up to the amount of Plaintiff's claim. See Hamra Decl. at ¶¶ 11-13; Verified Complaint at ¶¶ 18-22.

Accordingly, Plaintiff has met its burden of establishing that Defendant's property is located within the District. *See Harbor Pilots of NY NJ, LLC*,  474 F. Supp. 3d at 731 ("plaintiffs seeking attachment must satisfy the Twombly-Iqbal standard in identifying the property to be attached under Rule B - they must allege facts sufficient to 'state a claim to relief that is plausible on its face'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### D. There is no Maritime or Statutory Bar to Attachment

There is no statutory or maritime-law bar to attachment in aid of the foreign proceedings pending before the Courts of Dubai. Plaintiff seeks security for maritime tort and fraud claims arising from Defendant's issuance of unauthorized and fraudulent bills of lading. Rule B attachment is available to secure a maritime claim notwithstanding that the merits are being pursued in a foreign forum. *See Construction Exporting Enterprises, UNECA v. Nikki Maritime, Ltd.,* 558 F. Supp. 1372, 1375 (S.D.N.Y. 1983).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order directing the Clerk of the Court to issue Process of Maritime Attachment and Garnishment to attach Defendant's fuel bunkers/marine fuel onboard the ARGOS M, up to the amount of **USD 1,701,233**, pursuant to Supplemental Rule B.

Dated: August 10, 2026

Respectfully submitted,

**BLANK ROME LLP**

*/s/ Luke M. Reid*

Luke M. Reid (Bar No. 31228)
Luke.Reid@blankrome.com
125 High Street, 3rd Floor
Boston, MA 02110
617-415-1200

William R. Bennett, III*
William.Bennett@blankrome.com*
Noe S. Hamra*
Noe.Hamra@blankrome.com
Carmella R. O'Hanlon
Carmella.Ohanlon@blankrome.com
1271 Avenue of the Americas
New York, NY 10020
212-885-5000

*Attorneys for Dolphin Marine Limited*

6

*Admission pro hac vice to be filed*

7

*Admission pro hac vice to be filed*